Right, before we begin on Gilman, just a few observations. We issued the order after obviously doing, this is a massive, massive amount of information, and thinking about it and thinking about having you come in here and just start arguing, it occurred to us that we might well spend all your time on issues that are of interest to us without giving you some free range to talk about issues that are of interest to you, and in particular that what might happen is on the first, because we have overlapping issues, we have this 108 issue on both of the major appeals and, or the more dollar driven appeals, and that we might end up giving you no time on one of those appeals, or the first one to come up to talk about the issues. So we have divided the argument in a fairly controlled fashion, and we do want to have it argued that way. Normally on something like this we might have given, this is the sort of thing where typically we'd give 20 minutes aside, say combine it and just argue, but we're doing it a little bit differently. The second thing is more of a plea, which is we have read the briefs. There are a lot of adjectives and adverbs in there. You can certainly use some of them today. We'll call you on them if we don't like them, but this is a tough appeal. There are tough legal issues. There's a tough standard for the appellant in terms of abuse of discretion. So I'm really going to urge you to get into the law and the facts quickly and deeply, because that's the help that we need as a panel. So with that, let's call the matter. Yes, Your Honor. Peter A. Gilman, Charles Quinton Jacobs, counsel for Counselor Ken R. Phillips. Ken R. Phillips is a professional law corporation. Mark B. Keller, counsel for Counselor Kevin Perry-Gilman. Shirley L. Woods, athlete and goal scorer. And your Honor, Ms. Woods is not calling and is not present. All right, thank you. All right, Mr. Jacobs, on the first phase, which will be the discussion on 108E, or 108C, excuse me, do you wish to reserve time? Yes, Your Honor, I would like five minutes, please. All right, and you may proceed. Thank you, Your Honor. Obviously, Charles Jacobs for the creditors. Before I go into 108C2, I just have to preface something, because a major phrase in that statute is applicable non-bankruptcy law. And our point, you understand from the rest of our briefs, is that that two-year type of rule is actually not applicable, and it is because the lower court made a mistake regarding the ERIE doctrine. Both the adversary proceeding and the contested matter are federal actions, governed by federal rules of procedure, including the FRCPs, as they are incorporated by the FRBPs. And what we did was we brought a Rule 54 motion in each case, the adversary and the bankruptcy. I don't remember you bringing a Rule 54 motion. Is Rule 54 mentioned in your motion? That's why it was filed two weeks after we got the notice of discharge. Did you bring it based on Rule 54? Was that your discussion? The motion for attorney's fees, yes. I'm asking a different question. Was Rule 54 cited in your document? I can't look back at it now, but it was certainly not. So if Rule 54 was never even mentioned in your document, how would anyone have a clue that that was what you were doing? Well, obviously, first let me just state that when we filed our adversary pleading, Rule 7008B of the federal bankruptcy rules actually required us to proceed to claim fees, to plead them out as a claim, not just put them in the answer. That's a different issue. In the adversary proceeding, you have a claim for a fee. I get that, but I'm asking, you're telling me, I brought a Rule 54 motion, and I'm saying, did you say that? You may have. I'll go back and look at it. We probably cited cases like the one from the D.C. Circuit, which said that you can't bring – the 14-day window under Rule 54 doesn't apply until you can actually bring the motion. And that's why these things were filed within 14 days, because we had obtained federal judgments, and these were our fee motions. We weren't enforcing the federal judgments because we haven't gotten any money rights under the federal judgments. They're essentially declaratory in nature. You've got two things going on here, and this is part of the reason we gave you the time. There's a judgment in the adversary proceeding, and then there's claims or fees for activity in the main case, correct? But, for example, the judgment saying that there's no – I'm saying which judgment, because it's part of the problem. It's so easy to conflate. In the one, you have a claim for the fees in the adversary proceeding judgment. Got it. In the other, you don't. In the contested matter, there was no clear claim for debts, but this is a – Typical. Typical. I don't know what we call these things. Contested matters. They're lawsuits. The contested matter is like one of these fun sites. Contested matters, yes. Okay, please proceed. The Carnes case we think is basically dispositive because it's not an enforcement 169, and Carnes looks at those state statutes and deems them procedural, which is consistent with what the enforcement of judgment law says. The text of that statute says that these are rules for the judgment court, the state court that actually rendered the judgment. That's how you apply for your enforcement fees. I asked for judicial notice of an assembly report and a law revision commission report as to what these things were, and these basically indicated they're just continuing prior law but extending what was a six-month period for applying for the enforcement costs to two years. That is relevant because I said in that case, which was a state court case, which said if there has to be some sort of allowance made, then the time two years would run from the time the allowance, the court allows the costs. So that's the background. We don't think this is applicable law. We think the court made a mistake under the ERIE area and didn't actually apply Carnes properly. All right, assuming we don't buy that. Then we go to 108C2. Okay. You should buy it. Go ahead. I'm trying to sell a used car here. The Chandler Act, I'm not sure how it came about. I guess it's the old Bankruptcy Act, and it was 29F, which had a provision regarding what we're looking at here, and it said that the operation of any statute of limitations of the United States or a state affecting the debt of a bankrupt is going to be suspended until 30 days after the entry of an order denying a discharge. That's prior to 1978. In 1978, the Congress enacts a bankruptcy code, which creates an automatic stay against the enforcement of judgment under 36A2, 362A2, and also probably applicable here, the continuation of the civil action against the debtor on a claim, which would include the 685.040 right to not have your judgment diluted. At the same time, they enact Section 108C, and they broaden the language, and this is where we get that phrase, if applicable non-bankruptcy law fixes the time for commencing or continuing action. And then it says there, in a court other than a bankruptcy court, and that language is relevant because I think that explains a good deal here. The bankruptcy court will go on to say, oh, well, you're not stayed from moving forward in our court, and I don't think that's relevant because what the Congress was looking at was whether you were actually, well, I think some of the decisions of this court and others would say, well, can you move forward in the state court, and that's what's relevant. Let me ask you this because, I mean, again, this is a tricky issue. You clearly were stayed from collecting the judgment, no question about it. No question you can't go to state court. Right, without relief from stay, and so you'd have the 108C would give you some period of time to do something. But we're looking at the narrow issue here of the time to recover fees under a state statute, and I just pulled up one of your motions, and it's brought under CCP 685.040, and it does not mention any federal statute at all. You brought the motion on state court theory in the bankruptcy court. So you weren't stayed from doing that. You could have done it at seriatim during the case. You could have brought your fee request multiple times, at least in terms of the main case. Rule 54 requires state court time. You didn't bring it under Rule 54. You brought your motion under CCP 685.040, etc., and CCP 1021.5, and you also mentioned – no, that's all you mentioned. But they're all – this is all a fee motion being drawn at the end of the case based on the deadlines in Rule 54. So if there is some – You didn't mention Rule 54. Isn't that a problem? It isn't. It's just implicit, I would say, because this is what we were told. In fact, when in order, there was an issue as to whether you could recover fees for bankruptcy litigation under state law, and we had a motion for summary judgment on this, and the court said, yes, you're correct. The Travelers has gotten rid of this fobian rule and overruled it. We'll decide fees at the end of the case. What is reasonable is another issue. But that's how – when we're in Rome, we do as the Romans do. These are my federal rules of bankruptcy procedure, and they say 54 is incorporated, and that's when you make your fee motion. So this was certainly a Rule 54 motion. There's no Rule 69. We're not enforcing a state – we're not enforcing a federal judgment under Rule 69. The judgment doesn't exist. But the font of all this is 685040, right? That is, yeah, the second to the right because it's an anti-dilution. So let me make sure. I'm stuck on what might just be a semantics issue here, the enforcement and collection issue. I understand that once there's a bankruptcy, you're not going to run back to state court blindly and try to get a state court to do something. But that's just stating what basic bankruptcy law is. You're going to administer this through a bankruptcy proceeding, right? That's all that matters. I'm sorry. I said you're going to – the idea that you're not going to go back to state court to enforce this is neither here nor there. You never are. You're in a bankruptcy process, the point of which is to come up with a restructuring or liquidation of rights and to pay claims, correct? Right. Okay. So I guess I'm struck with why, if you can – which you absolutely can do, file an objection to an exemption, and if you can file objections to dischargeability, and you can do that. I mean, why are you – why is 108C even an issue here for what is just merely the liquidation of a further part of the debt? You're at five minutes, so if you want to answer that now or sit down and think about it. I'm not even sure I understand the question. Well, that worries me. Why don't you have a seat and you can think about it, and I'll try to rephrase it, okay? Okay. Yeah, we're at your five minutes. You can certainly continue through it, but we want to hold your time if that's what you want to reserve. Good morning, Your Honors. Mark Ellis on behalf of Kevin Gilman. So now let me tell you what worries me, is when the panel says that they see the 108 issue as a tough issue, because I have to tell you I don't. Given we do. Well, yeah, I will. As you can probably tell, I am not – I'm not a licensed bankruptcy practitioner. When I come into bankruptcy court, which I often do in front of Judge Klein and Judge Sargis and the folks in the Eastern District where I'm at, I have to study like a first-year law student to make sure that I get it right. I never know what to say to that. Someone comes to the podium and says, I have no idea what you do. Well, now I'm intrigued. Okay. So here's – you've seen the briefing, and the briefing is essentially the same in the two briefs where I put it. In the 1101 brief appeal, that's at pages 52 through 58, and in the 1066 brief, that's at pages 22 through 27. But when you read 11 U.S.C. section 108 – and I'm just going to do it with dot, dot, dot, ellipses. So C2 says this. If applicable non-bankruptcy law, ellipsis, fixes a period for commencing or continuing a civil action – I think that a civil action should be underlined and highlighted – in a court other than a bankruptcy court on a claim against the debtor, ellipsis, and such period has not expired before the date of a filing of petition, then such period does not expire until the latter of hyphen, one, the end of such period, two, 30 days after notice of the termination or expiration of the stay under section 362. My point here is that this is a motion – these were motions for attorneys. They were not civil actions. Isn't this akin to filing, renewing a judgment, filing a mechanics lien, any of those items which the Ninth Circuit has addressed several times now? I think so. I think, you know, the two cases that I keep coming back to, one was actually cited by the creditor. That's In re Spiritus, and that's a 221F3, 1079. And that was a decision by Judge Kaczynski. And then there's a procuring decision, Enright-Brickley, which is at 70 Bankruptcy Reporter 113. That's 1986. I think all of – I think these cases support the argument that I'm making, and that is if there is a claim for fees, and there was, before we went into bankruptcy court, okay? And that's all still kind of pending out there in the Placer County Superior Court Appellate Division because, if you can believe this, Jar and Dice versus Jar and Dice type of odyssey started in limited jurisdiction court. With respect to those fees that may have been outstanding at that point in time, and those were enforcement fees there too, as I read 108, that stays any ability to go after those fees at that point in time because, obviously, they're in a court other than the bankruptcy court. Do you see what I'm saying? Yes. And so 30 days after the judgment came down here, that's when 108 would apply to let him go back into Placer County Superior Court and bring the motion. Well, it's 30 days after the stay terminated. Correct. If the stay terminated. And isn't that a fascinating issue? Creditors have taken the position in Placer County Superior Court, this is not going to be in your record, this is all happening right now, that the judgment came down in July. The Rule 54 partial judgment came down in July, and I think that was in part because this court asked, do we have, I think behind the scenes, do we have jurisdiction here? And it gets to the, keep going, keep going. I know where you want to go. My point is this, and Judge Kaufman is, I've now been in front of her for six years, she's an extraordinarily thoughtful judge, notwithstanding that I think counsel on both sides, myself included, have stressed her to no end at one point or another. Hopefully our briefs didn't stress you too much here. But it has been, I can say, a contentious relationship. And notwithstanding that, through all of this, she has kept her composure and does really, really thoughtful rulings. And so in this case, when she says, look, you're asking for fees for enforcement within the bankruptcy court. So not in another court. Not in another court. And these cases all stand, if you read them carefully, they stand for the proposition that there's claims outside of the court that are stayed by 362, and then there's the claims within the court. And that's what Judge Kaufman says. You're doing this within the bankruptcy. And then here's the... So among other things, the stay is not a relevant concept. Correct. Okay. That's exactly right. And, you know, 108 and 362... I'm not sure that's exactly what Spiritus says, which is why I found it confusing, but I... Well, here's the thing about Spiritus, though. You know, it goes back, and I've got it right here. And you'll see that the court relies upon, or cites with approval, this Second Circuit case that got cited in our briefs, and I'm going to butcher this. It is Aslanidis, A-S-L-A-I... A-S-L-A-N-I-D-I-S, versus United States lines. That's at 7F3rd. And that is the... That's one of the cases that says it's the inside-outside. So 108 applies when you've got a claim, as you said, a lien or attorneys' fees claim, or something outside that is being enforced in the state court action. 362 comes down, bam. You know, no one in state court... You know, no judge in state court wants to get near 362, so that all stays. And then 108 applies and says, okay, all of this is going to... Your right to go after that, or to re-up that, is within 30 days or 60 days after the stay is lifted, for whatever reason. But within the bankruptcy court, you have to follow the rules. And here's the point that you have to, I think, find. Creditors come into court under 685.040, right, under the Enforcement of Judgments law. That's what they do. Not under Rule 54. I'm still not even sure I understand the Rule 54 analysis at this point. But certainly it's under the Enforcement of Judgments. It's within the court. And that's what... The state court statute, and, I mean, to be fair to him, okay, he's saying this is one mechanism for getting fees, but he only gets them because of the state court statute. That's the only way he gets them. And, you know, I fought him on that a little bit, because even the state court statute, in terms of other law, which is the provision under 684.040, it says either if you have a contract or under other law. You know, I said he didn't have a contract, and the other law was... And he fought that, and Judge Kaufman said, okay, no, this is enforcement within bankruptcy. And the California Supreme Court case in McQueen says that, you know, you can enforce in bankruptcy court. That's an enforcement proceeding. And McQueen, by the way, is 59 California 602, and the applicable Supreme Court decision is at page 613. But the point is this. You can't use that statute and take the benefits, and you know what I'm going to say now, as to the detriment of the other requirement. Let me ask you a question. Just indulge me on this one, okay? Let me just take Mr. Jacobs' side of things for a second. Tell me what you think the purpose is of a two-year requirement under state law under 685.040, and should it be the same? When we have this centralized process in a bankruptcy court. I don't think so. And what I'm going to say is I'm going to refer you again, Judge Lafferty, to the conservatorship of McQueen decision by the California Supreme Court. Because I agree with you, the reason is kind of obscure, right, why there would be a two-year requirement. Well, it may not even matter, but, you know, they made me an argument that there's a really good reason in state law that makes no difference in the federal courts. Well, at page 615 of McQueen, again, that's at 59 California, the court says, moreover, section 685.080's time limit serves a policy purpose of its own to prevent unfair surprise to the judgment debtor. And then away it goes. And what they're saying is that under the statute, you know, you should know as time goes along. No, I hear you. Okay. So that's what I think. And is it the same concern in a bankruptcy court? Well, I don't know the answer to that, I mean, honestly. Well, there's not as much of a threat of getting a payment in full of your judgment while you're in bankruptcy. I think that's probably right. But I think you have to take the statute as enacted in California and is interpreted by the California Supreme Court on its face. I mean, I don't think that we should start speculating as to whether or not it should have its full effect. Yeah, I'm trying to figure out if it goes to Mr. Jacobs' question of what's the right rule. That's hitting that analysis for me, okay? So I will tell you that... So let me ask a question, and I'm not even sure how this plays out. Let's put aside the adversary for a moment and then the... Oh, I guess you can't. If there was no motion for attorney's fees, which I believe gets to the point Mr. Jacobs was making, but you win on the discharge, all right? So eventually you have fees. They're still there. You go back outside of bankruptcy, all right? Would that then raise your application of 108C, that because you had those fees, they're non-dischargeable, now you're able to go back out? Did you have to? Can you do that? Not sure I understand your question. Is he being penalized by bringing the motion for fees within the bankruptcy? Absolutely not. Why not? Because that's the appropriate place to do it. Here's one of the things that I can say. But it would be appropriate. It actually goes to Mr. Jacobs' argument. It is an appropriate place to do it because you had to bring it within the time imposed by the procedural rules. Okay, but he always controlled that time period in the bankruptcy court. That was Judge Kaufman's point. You got to control this. So he should have just brought, every two years he should have filed his returns, essentially. Exactly right. Did he attempt to win agreements? No, no, not at all. Not that that's in the record, but I can tell you that he did not. And so I think, Judge Berger, that my position, and I'm not sure if I'm answering your question correctly, but this is kind of my seat of the dance for you. Anything that is incurred in terms of attorney's fees and costs in state court needs to be brought in state court. It needs to be brought in front of those judges that heard and saw what was going on. I think that's the only way that attorney's fees work. And I mean whether we're looking at Hensley v. Eckerhart with the United States Supreme Court or we're looking at Ketchum v. Moses, which is the California Supreme Court in the Toronto line of cases, what we know with respect to fee motions is that the person who is in the best position to decide whether or not the fees are reasonable, and reasonable is going to be the touchstone in all of these cases, is the judge in which that's appearing in front of. Now, structurally, I think the way that 108 does work with this is that whenever this bankruptcy does ever completely end, hopefully in my lifetime, anything that is still pending in state court will go back to state court. And I can tell you, again, this is not in the record, that is what is happening. I don't think Mr. Jacob will deny that he's going back to the Placer County Superior Court Appellate Department and is now asking for attorney's fees. Now, there are some other issues with that because I think he's asking for attorney's fees in this case that Judge Kaufman didn't give him out of the bankruptcy court. I've opposed that, saying that's improper. This is not in front of you, but I'm trying to answer your question in that federal attorney's fees enforcement in bankruptcy court gets decided there. And you can't sit there and basically take the rule and say, okay, well, I'm going to ask for fees under this rule, but I'm going to say that bankruptcy court rules or rules of federal procedure basically let me nitpick the statute that I'm doing to get all the benefit and none of the detriment or none of the burden. It just doesn't work that way. So he's not without a remedy, okay? And he wasn't without a remedy here. And that's why I think this is so clean, although the panel doesn't. Thank you. Thank you very much. I'll see you again, I guess, in a few minutes. In just a few minutes you will, yes. All right, Mr. Jacob, you have how much time? You have almost a full five minutes. There's this – I said something about other than a bankruptcy court because I also cited the Gurney case, which the BAP mentioned that this was or used language as saying the issue is whether you are prevented from acting in the state court, which is not – contrary to what the court was saying, the bankruptcy court was saying, you're not stayed in the home bankruptcy court. The home bankruptcy court issue, though, I think is – what has happened, I think, is Espertos broke away from that sort of thinking and said, wait, if you actually look at the language of the statute, basically it says whether it's barred by the state is irrelevant. And we've addressed this in the – whether you are actually barred by the state is irrelevant. And this is addressed in our briefs. They actually looked at some cases and approved them. Do you have – and I've looked – I think we've all looked, but do you have any case involving 108C where the actions that are at issue were entirely post-petition and not involving any state court action, any state court lien, any – Entirely post-petition. I'd have to ask her to write a supplemental brief if I could find one. You haven't found one. I mean, you haven't cited one. I didn't miss it. I don't think – so we relied heavily on Espertos, which said – and the commentator who said they'd broken away from that in the Ninth Circuit and said it doesn't actually matter whether you were actually barred by the state. In that factual context, Espertos is factually distinguishable in that it deals with something that clearly was state. We've got mechanics liens or OBRAP liens or those kind of things. What's at issue is the efficacy of that lien that goes away, and they're saying you couldn't enforce. So I read the language in the Ninth Circuit, so we take it very seriously, but I'm not sure that I'm comfortable that it applies four squares here underneath that. So could you help me with that? Why is – here, there was nothing that barred you from doing anything as evidenced by the fact that you did it. Well, actually, we've certainly – we were dragged into a proceeding in bankruptcy. We didn't file the bankruptcy under Circle 685104L. We filed under federal statutes preventing a discharge, and then we just made our claim and said 7008B says we have to – if we have a claim for attorney's fees, we have to prosecute it here by putting it out as a claim. So we were directed by the Federal Rules of Bankruptcy Procedure to proceed just like a regular civil litigation lawsuit, a general civil suit. We got that piece. But it doesn't absolve you of the basis. To the point you keep coming back to, 685040 is your basis. You have to comply with the procedural. You've made that point. But your entitlement is dependent upon state law, and we focused on 040, but then 080 is out there as well. But as we said, those are procedural, and Carnes treated them as procedural, and the legislative history, et cetera, has said it. And the enforcement of judgment's law itself indicates these are procedures for the judgment court. They might not necessarily apply elsewhere. But that is in our briefs. Let me ask you a different question because we're running out of time, and I'd like to give you a chance to respond to this. You did make a demand for these fees in your complaint. Correct, in the adversary proceeding complaint. In the adversary proceeding complaint. And again, we have two different tracks we're going down here. There's no unfair surprise to the debtor. Well, let's go ahead and – what does that mean in the process of this whole – the whole state court? Forget the – what does that mean? Is that helpful to you? What does that do? Not only did we make the claim in the adversary complaint, it was – there was no statute of limitations type of affirmative defense that should have been argued in the answers that were filed. I understand that one, I'm not sure. Okay. But – Quickly, I just lost that track. No, no, no, go ahead. No, no, I lost the question of the track. Oh, I'm sorry. The question is, what does – as we're analyzing this and struggling with the overlay between bankruptcy and the state court statute and the time limits, is the fact that you pled that relief in – or requested that relief in the complaint itself helpful to you? And if so, how? Well, we're governed by the federal rules for doing the federal lawsuit. I think what's going on – I mentioned it, maybe it wasn't clear enough. You've got duality here. You've got federal lawsuits and federal rules to govern them, and the fact is that the state just happens to believe and didn't decide until after the Travelers case, which overruled FOBIA, and to say, well, you know what? Anything you do in bankruptcy, that is enforcement. And contrary to what Mr. Ellis said about appropriate times or where to go, the Jackie versus Pichelli case is a case where bankruptcy litigation is undertaken. And then they go back to state court, and they say, hi, to state court, we incurred these fees in bankruptcy, and we'd like them here. It's basically you can guess your fees either place. And we've got – we've had problems. We had – took us a year and a half to get, I guess, a fee award here. So why wouldn't I? If some of our time is going to expire, I'm going to go file something. Well, that's a whole other issue, and maybe we'll be here another day on that. But your time is up at this point in time, so we're going to switch to the other – give you a chance to take a deep breath. And a glass of water, thank you. And a glass of water. And then I think we'll start – in the order, do we say which we're doing first, or we just say we'll do one and then the other? Because otherwise I'll just call and say, do you have a preference whether you argue? Just on the main case. Main case first, and then the adversary. That's fine. We just want to know what page to be on. There's a lot of pages. A whole lot of pages. Ten minutes. Ten minutes per side on this. And, again, do you wish to reserve any time? All right. Thank you. And I think I will just observe before your time starts that you can now see why we did this, because we would have easily kept you on your entire 15 minutes on at least the first appeal talking about this issue. And we know that you have another – other points you want to raise. So the other issues, many, what do you wish to emphasize? Okay. This is our argument over the bankruptcy case. Am I running? In terms of time? Yes, you may start. Because there's so much volume, so many issues, we're really actually happy to stand mostly on the papers and just to go over just a few points. The first point is that we see this case involving the gaming of the Carter decision. While we can claim any exemption we want without doing any research into it, that's how we see the debtor acted here. Because the burden is on the other side to disprove our exemption claim. And what happened is there was no reasonable research into Mr. Gilman's claims of disability, because that would involve both medical research and vocational research as to whether this person could earn an income. And if you – we included some excerpts from a trial in which Ms. Bliss examines me and asks questions about whether I'm a doctor. Am I an expert? Can I say anything about cancer and so forth? Well, no, but neither is she. And how could she have someone walk into her office and they say, I may have cancer, or as far as I know I have cancer, and not see that as a red flag and try to find out something about that issue? You failed in that litigation. We did. In fact, the determination was essentially what we would have argued on a summary judgment motion. And we had tried to get that. And so even if – the case Townsend, the 9th Circuit case, says that if you don't have a reasonable inquiry, that makes it tantamount to a frivolous claim. And even if you have some argument about you have to bring a Rule 11 or Rule 9-0-11-11 motion prior to some decision, that authority does not extend to bad faith jurisprudence and under the 9th Circuit jurisprudence. At some point, a case can be so insubstantial that it becomes bad faith to keep pursuing it. I think there was an Edwards v. GM cinema or something that was the origin of that idea. It was a Girardi case which mentioned that issue. And what struck me in bringing this motion originally is that Attorney Bliss is – is a debt relief agency. And there are – with the BAPC amendments, there were heightened requirements for – beyond the Rule 9-0-11 requirements for these DRAs and attorneys. And I think it was in the papers that you have no information that the claim is invalid. And yet they did have information that the claim was invalid. And certainly those things were available on media, social media and so forth. And the very fact that someone is not receiving disability benefits but is claiming to be disabled is a red flag. What's the standard that we apply on appeal in connection with this issue? Isn't it abuse of discretion? Well, all these things are reasonable discretion. Discretion doesn't entail using the wrong standard. How did she use the wrong standard? How did she use the wrong standard? Well, that would be in the paper. But it's saying that something that is colorable, that's not the standard if there's actually a bad faith there. Well, those are factual – I mean, you know, you're conflating the standard. I have a little problem with your documents because this conflation seems to me to occur a lot where you say they're wrong. They abuse their discretion because they didn't decide it the way I wanted them to. And that's not – Well, I understand that. That's not the way it works. But, gee, this is a debt relief agency. And there's language. And Mr. Gilman at trial is saying, oh, I didn't look at her records, her medical records. And Ms. Bliss, three years into the case, saying, oh, I haven't looked at the medical records. And look at the responses we get to the request for admission that we send off, which are in October of 2013, I think. And they have the records because they've sent them to me. And we get these boilerplate responses, all of which go on like not providing a discovery. They're all elements of someone who knows that the case is not worthwhile. And they're pursuing it. I don't want to belabor the issue of the failure to admit sanctions. That's well covered in the briefs. With respect to the issue of the mediation issue, this is with respect to Ms. Bliss trying to get sanctions for attending a mediation which she was not required to attend. And what you see here is churning of the file. It's really bad faith by Brandon Reeves, who is the attorney for the Ellis Law Group, who sees an opportunity to obtain sanctions because my client missed a plane. And even though he did not want to reschedule the deposition, or excuse me, reschedule the mediation, and he knew that the mediation went forward and that my client participated, in comes this motion to say, oh, well, give us sanctions. And what's really going on there is an attempt to argue that because she didn't make her plane in 10, she acted contemptuously. And Judge Gerry didn't report that. She had, in fact, prepared and purchased a plane ticket and so forth. But the cure for something like that would go to the court and say, hey, she disrespected your authority. It's not, give us, what they did is they churned this for a motion and all their, all their fees for mediation. When they knew, prior to the mediation, that there was not going to be a settlement here. Well, hope's been eternal. Yeah, well, it was admitted by Ms. Bliss in a status conference statement. I called Mr. Brandon Reeves beforehand and said, why are we even going down there? Is this going to happen? Has your client, has he changed his position? Did the court order the mediation, remind me? Yeah, she did. Okay, well, then it's a different question. Yeah. I mean, the parties are hopeful, you know, you'd have to have whatever belief you have, but the court ordered it, right? Yeah, okay. As long as we're clear that the court ordered the mediation but didn't set the date. Oh, okay. Let's move on. And the reason is because my client never violated a court order saying appear on this date.  Well, you're right at three minutes, so that's, so you took a breath. So, do you want to stop there and let's stop the time and I'll give you a chance to give me an answer. Anything else on the main case you can do now or you can do it reserved time? I'll do it now. Okay, then start the time again. Okay. As to the cost shifting on the sanctions motions, we've cited the Holgate case, which is when the safe harbor is not provided and the Ninth Circuit said, well, you don't award sanctions for something like that, you just deny the motion. We've indicated from the Ninth, the Eighth Circuit Bankruptcy Appellate Panel and some other courts, these are, these cost shifting under Rule 9011 is not actually sanctions, it's just cost shifting. And we emphasize that there was a knowing noncompliance with Section 329 and I don't see how any award of attorney's fees can be made, whether you call them, whether they're for shifting costs or even as sanctions or anything. And sanctions is an assumption of the lower court, which is inconsistent with what the Eighth Circuit said, in which decision appears in her actual ruling on the issue, that this is cost shifting. And there's just noncompliance with Section 129, 329. I don't know whether it's associated with this, it's part of the main case, it's not 108C2, it's this equitable tolling issue. There was some question as to why we cited the Lance case, L-A-N-T-Z, and that's because the California Supreme Court has said that the legislature is very well capable of saying when equitable tolling applies and when it does not. And I've explained several times that if you require a motion to be brought, it gets back to this idea of a central procedure and deciding the fees at the end of the case. So equitable tolling under the state courts, it has not been ruled out in one case. It's actually suggested it's possible in an appropriate case, and we think that this is clearly appropriate in this case. And I also mentioned that the bankruptcy judge was not familiar with everything that happened in the state court. In the state court, we get whipsawed. We bring a motion for enforcement fees in the state court before the bankruptcy petition was filed, and in that case we were trying to recover fees that were expended on an enforcement appeal. For example, we had moved for an assignment order, the assignment order was denied, we appealed. Are those fees recoverable immediately, or can you claim them immediately? I know that state statute we did, but then we were overruled by Mr. Ellis and said, oh, you can't do that because you haven't had a decision on appeal yet. So we're getting two sides of these, he's arguing on both sides of his mouth, and I'll just wind it up by saying that while you generally go, California doesn't require you to obtain your fees on appeal from the appellate court, you go to the trial court. It is not, just as in Jaffe, you do not necessarily go to the court which presided over the case to get your fees. You can, and it has some benefits, but that's not an ironclad rule. Thank you very much. Good morning again. So that last argument, the last three minutes, which kind of goes back to the, do you want me to address that? No. Okay. So everything that creditor's counsel has raised is, I was kind of following along in the briefs, I mean, is really extensively briefed. Do you, if you've got any questions, I'm happy to. Well, he focused his argument, and main case, there's so much here. So much. I mean, you know, we could give you 12 hours of argument, and we would never do that, but you couldn't get through it. But he focused in the main on the sanctions piece. Right. And you can certainly address that. This is your time. He's raised a bevy of issues related to the fee award, or the reduced fee award in the case. And so I guess my question would be, you can use your time responsibly, or you can attempt to shore up or buttress the ruling she made in the case. His arguments, it's impossible to, in the short, categorize them, but one thing he's saying is that she acted independently of briefing, that things weren't argued and that she made the argument she shouldn't have done that, and that, you know, that's one that resonates. And then he complains that her discussion of reductions was not sufficiently specific. He had some estoppel arguments. I'm not intending to say that what I just said was a full summation, but if you wish to address any of those points, you may do so. Sure. So with respect to the arguments that he did make, Your Honor, let me just say that on the sanctions issues, I think Judge Kaufman was very, very careful in terms of finding that there were, factually and procedurally, that creditors' 9,011 sanctions motions should be denied. And that's an abuse of discretion standard factually, and nothing's been pointed out in terms of the law. Right now, I'm just talking about denying their motion as opposed to granting my fee request. Okay. So here's the interesting issue, I guess. I should know better than actually raising this, but I guess, you know, there's an issue, I guess, under 329. 329 versus getting sanctions, because I did ask for sanctions. They in no way compensated me for the amount of time I had to spend on that motion or the motion to reconsider or whatever. I think I asked for eight hours at $250 an hour, which is far less than my normal hourly rate, and was probably not even a third of the time we spent. And she looked at that, and she granted that. I will say, you know, even though that was, what, three years ago now, that has never been paid. That order has never been satisfied. So I'm just going to leave it at that. I think all of that is rock solid. Now, with respect to the two attorney's fees motions, you know, let's just be clear. Let me throw myself on the sword in front of the court. You know, that was at a time in my firm where things were moving fast. This case was very confusing. I had just come in into the main action on behalf of Ms. Bliss, who had essentially been knocked out. She just couldn't keep up. I'm sure that's clear with the record. She's a lovely person, and she's done bankruptcy for years, but she was just overwhelmed by this case. And I came in in her place because otherwise I felt that Mr. Gilman was just going to be litigated to death. And so that's why. How old is Mr. Gilman? He's in his 70s now. And, by the way, one of the things that, you know, kind of snarkily gets said out there, the record reflects that he had cancer. You know, and I think when you read the transcripts that are part of the record from Judge Coughlin, when she denies the sanctions by saying that, you know, Ms. Bliss didn't do her due diligence in terms of defending this, you know, she's very sympathetic to Ms. Bliss and recognizes that, you know, as an attorney coming into a case, you don't know all the facts at the time. You know, and especially if you're coming in and you're doing a, you know, a new filing, a new petition, you know, under fast circumstances. And you can see from the record in this case, one of the things that did happen was that Ms. Bliss had to go back and amend various pleadings, and she missed, you know, dates, and she came back in the court, granted Rule 60, you know, relief and things like that. So let me just set that aside. With respect to the attorney's fees, the law is clear. Whether I raise the issue, a court has an independent obligation, and I say obligation, not discretion, I believe, independent obligation to look and make sure the fees are reasonable. That's what, that's one of the major things that trial judges do. They just do. It's in front of the judge. Yes, well, but the case is in front of the judge. And so the question is. I got it. And so she goes through and looks at it. She raises the two-year issue. She cuts it off. And that's perfectly proper in terms of, and the cases that are cited really by both sides stand for that proposition. And I'm going to butcher this case again, but it's the Guardini or something case from the Ninth Circuit that everyone looks at, and they say, look, creditors use it for the proposition that you can't go in and do that. I think the case is exactly the opposite, that it's perfectly proper. And I believe a trial judge has an obligation. Look, in this case, when the two, either in the main bankruptcy case or in the adversary proceeding, at this point in time, because I've just looked at the judgments, creditors counsel has gotten $300,000 in fees and about $9,000 in costs, or, I mean, there's a piece of paper that says that, over a case, and this is what Judge Kaufman keeps saying over again, it doesn't involve a lot of money. And so you saw in my briefing papers, there's this concept in both state and federal law about padding. Now, we all think about padding as putting down time that you actually didn't do the work for. But in both federal and state law, it's used in a broader context. And that context is putting time in that is not necessary, that's excessive. That's how I use padding here. And that's what Judge Kaufman found both in the adversary fees motion and in the main bankruptcy fee motion. And she is in the best position to determine that. And you've seen the record, you've seen what the motions for attorney's fees look like. I mean, they are for anyone, you know, to go through that and try to make sense out of it. And she went in exquisite detail. Now, I will say this, you know, in federal court, the Ninth Circuit has always required that, you know, judges do go through that detail. But she meets that standard here by any measure, either from the bench when she explains to creditors' counsel. Creditors' counsel has no problem challenging Judge Kaufman and going through it. Those hearings lasted a long, long time, much to my chagrin. But they did. And so either between her orders or her ruling from the bench, you have a very, very, very complete record of what she did and why and what her rationale was. I think to go back through that and to try to figure out, you know, that's where the discretion comes in. There is no manifest abuse of discretion here in any way. So I do have a second here, and I just say I see your law clerks sitting behind me. As a former Court of Appeals law clerk, I can only say I have sympathy for them in whichever law clerk or clerks had to go through that, go through this record. And now I'll sit down again. I guess I'll see you again in a second. All right. So at this point, Mr. Jacobs, we're going to argue that the fee issue is related to the adversary proceeding. The adversary proceeding is not an appeal? Well, yes. I mean, what else is there? The adversary proceeding is not an appeal, right? No. No. It's a fee. Okay. I think... You may begin. Three minutes for whatever reason. Thank you for catching me on that. Thank you. Your Honor, I'll start off with, in order, the anti-SLAPP motion. There's not a lot to add to that, but to summarize, the point is that, first, Mr. Ellis did try to submit something that was not designated for the record and is improper. He decided to call it an executive record, something from Judge Carter in the district court. We've addressed that and said it shouldn't have been brought in and it's not relevant. What is relevant is the law, and I believe both the Ninth Circuit and the California Courts of Appeal are in tune with it. It's not the form of the cause of action, but it's the activity involved that determines the applicability of the anti-SLAPP statute. And in this case, an anti-discharge claim was filed, or an anti-discharge action was filed, and we received a malicious prosecution claim in response. It was a claim. Every offset is based on a cause of action, so this was a cause of action for exercising First Amendment rights. It's not really a mystery to me that this would apply. This is a remedial statute. The next issue we addressed in our brief was the motion to strike that was denied against an amended answer. And I guess I should summarize, mention, connect a few dots. This was mostly Brandon Reeves involved in the case at that point for the Osawa group. The amendment was very snarky. When we had brought a motion to strike an equitable estoppel defense and the motion was granted with leave to amend, then Mr. Reeves comes into the case and files this elaborately, a whole bunch of new claims and defenses and arguments and so forth. And that wasn't within the scope of the leave to amend. And we got a real snarky response, oh, we can do it because the court didn't say otherwise. And that's a sort of snarky type of litigation tactic that we'll see come again in the deposition sanctions motion, the motion to compel sanctions. Well, again, people didn't get along in the case, but I'm struggling here a little bit. This is my I'm struggling face with why I, you know, we have a narrow band in an expansive case with expansive issues. I'm hoping that everyone agrees that our bandwidth for decision is narrow. So what, it seems to me you're talking about things that I don't, maybe my colleagues disagree with me. I don't think this is really particularly germane to the decisions we need to make. Why do I, why are we going back to snarky stuff instead of talking about what she did and why she abused her discretion in doing it on the feet? This is the discretion on Rule 15, the motion to strike was abused because this is a violation of Rule 15 and it was a violation of the local rules under that. There should have been sanctions there. The 9th Circuit has said the rule is pretty liberal, but if you don't follow it, you're going to pay a price. And what he did, he threw all sorts of things in the case, delayed it and prolonged it and increased it. All these costs for all these claims and arguments that were thrown out and would have been properly understood is not being valid from the inception. The next issue was a deposition related motion. There, we explain why, you know, discretion has limits. There is actually a rule out there that says that when you've attended for a deposition for a day, you can't be hauled back again without your agreement or a court order. Despite the fact that there were two depositions set and then you added an additional witness. It's not actually adding a witness, it's because the witness would be a corporation. I think, well, there were two additional people that were inserted at that time. Right. So, I mean, you can say that as to one, but there were two. I mean, there was the person most knowledgeable and then there was an individual that was at your request. Well, the individual, Tammy Phillips, was there that day and there was an individual. And Tammy Phillips was there as the person most knowledgeable. Yeah. But the rule under 30B-6 is that there's a duty, actually, to substitute a witness if your existing witness can't answer. You're running over the point, though, and it goes to Judge Taylor's comment. Again, you won. Yeah. So you're really arguing about that decision needs to be reversed so I can get additional sanctions. We want the sanctions order rescinded and the $6,000 returned to us. That's the point, yeah. Because that was not a correct decision. The discovery orders are not final until we get the final decision. Apparently, we got the final decision with the Rule 54 judgment. They're interlocutory. So this is the first time we could raise it, the award of sanctions. Close appeal. And the next issue is the denial of the motion to compel. I just recently, which sanctions again, this is a problem with an attorney not providing discovery and saying that we can't get information on financial status of somebody when we have someone arguing that they didn't pay sanctions because they have, excuse me, there's a claim in the adversary proceeding under 727-A-6 for violation of court orders, including an order to pay sanctions. Mr. Gilman was ordered to pay sanctions. The bank comes to the case and didn't pay them. So if you're going to conduct discovery on that issue, you can conduct a discovery to see whether he has some sort of defense about inability to pay as he, in fact, raised elsewhere. And Mr. Brandon Reeves from the Oslo Law Group wouldn't give us this discovery. It goes on and bruised long and hard, and then we can bring a motion eventually and bring it on time and it's denied for supposed noncompliance with the local rule. We just had a court take judicial notice of the court's recent decision not to apply the local rule. The commonality in each case is that whenever the debtor would be sanctioned or his attorneys, the court decides to apply the rule in a way that doesn't lead to an order of sanctions. He has a problem with sanctions. But I don't know how else we can deal with people not following the law, whether it's Attorney Bliss or being jerked around by someone throwing all sorts of new claims into a case without going through the proper Rule 15 procedures. All right. You have two or three minutes. A little over. Do you wish to keep going or do you wish to reserve? I'll reserve. Thank you. So I guess as I understand the issue is that the judge's actual ruling on attorney's fees is in the panel's mind for purposes of this portion. Does the panel need me to address any of the issues that have any questions been raised that the panel wants me to address in terms of the argument that you just heard? It's the same situation as before. I would reiterate what Judge Taylor said in your opportunity. Again, this is just like the main case and it covers such an expanse that anything that you care to bring to the court's attention is fine or you may respond to the specific matters. We didn't even get to the decision on fees, which I assume Mr. Jacobs will get to in the court's reasoning. So let me just start and address Mr. Jacobs' points briefly. So the 425.16 Code of Civil Procedure, the anti-SLAPP, again, Judge Coffman ruled on that. It then went up to the district court. It got ruled on. And I mean, the bottom line is this, is that an affirmative defense is not a cause of action that can be stricken. I'll leave it at that. I mean, the law is clear. The law hasn't changed since then. If you want to know why we had causes of action like offset, you know, just for your own curiosity, or malicious prosecutions, because they weren't causes of action at all. They were simply bringing to the court's attention because bankruptcy court is a court of equity, of course. You guys know that better than I do. And these were equitable concerns in terms of how the cases had been litigated. And so we wanted to bring them to the court's attention. And in terms of affirmative defenses, you know, at least in my experience, anything goes in terms of putting that out there. So that's why we did it. In terms of, you know, the sanctions that the creditors believe should have been, you know, levied against Ms. Bliss, or I guess my associate at the time, you know, the court considered those, as she always did very carefully, and denied there being any basis. That's an abuse of discretion. Exactly. So now let me just turn just real briefly again to the attorney's fees issues. As I said in my last argument, you sit and you look at the orders, and you look at the memorandum of opinions that support the orders, and you look at the transcript, all of which is in the record in front of you, and you're going to find that Judge Kaufman did an excellent job in coming up with her determination of fees. They certainly, neither one of the orders, certainly went as far as I would have liked to have seen. That's because, you know, she wasn't favoring anybody. She went down and she cut it the way that she saw it. You know, again, what you will see throughout either her memorandum of opinion or her, you know, giving rationales from the bench is, you know, she says, I've seen these motions over and over and over and over again, and they've been denied over and over and over again, and creditors, you just don't take no for an answer, and yet you want to be compensated for this, and I'm just not going to do it. I did find, since these two issues overlap with the fees before, I did find the case that I was referring to, and if I could just, if you'll let me put it in the record correctly, it's GWADURI, G-W-A-D-U-R-I versus I-N-S. It's at 362 F. 3rd, 1144, the jump site that I would direct you to is pages 1146 through 47, and that's Ninth Circuit, 2004. And what the court actually says there at page 1146 is that it is well within the court's discretion to go ahead and grant or deny an unopposed motion for attorney's fees. There's a Northern District case that's Brayton, B-R-A-Y-T-O-N versus Purcell, L-L-P versus Recordon, R-E-C-O-R-D-A-N and Recordon. That's at 487 F. 2nd, 1124, pages 1130 through 1131. Again, that's Northern District, 2007. And then there's a case that the court herself cited repeatedly, and that's Center for Biological Diversity versus City of San Bernardino. And that's 188, count out 4th, 603, 615, and that's a 2010 decision. And I think it makes sense that you can apply California law or use it as persuasive authority here because you are dealing with the California statute, both underlying the substantive statute and then, of course, as we've been talking about, 685.040. Thank you, folks. I really appreciate the time, and I hope that I've helped to elucidate at least some of the issues. Thank you all very much. Thank you. Thank you. All right, Mr. Jacob, you have a little under three minutes for the final word. Responding to the issues under the anti-SLAP statute, quote, got ruled on. Actually, it didn't get ruled on. This is just a misrepresentation of the decision. The only issue that was formally ruled on by the district court was whether to dismiss for lack of jurisdiction. And there were not a number of issues that weren't substantively addressed there. And besides that, if you're going to argue about what was ruled on, that court pretty squarely said that Ms. Bliss was made a frivolous malicious prosecution defense. And no one has denied that. Respect to abuse of discrimination, excuse me, abuse of discretion. If you're not following the law, you are abusing your discretion. And the question is only whether there's some other alternative means of salvaging the decision. How is she not following the law? Again, in brief, you've got a minute and 15 seconds. Right. I'm looking down. Whatever sanctions motion it was, I think he was talking about the deposition sanctions motion. We said we stood on our rights under 30D1, and we were hammered for that. And that's not respecting our rights. With respect to fees, cutting the way she saw it, well, there were fees that were things that she did not see. We have a decision where she made some assertions about time spent on rule 911 motions, which she did not see because they were never filed. They were merely served. I think we asked to augment the record on that because it would not otherwise be in the record. I think you need to stick with the actual decision that she made and how we address that in our briefs, because the sort of summary provided by Mr. Ellis is misleading. Regarding the court as an advocate under the Gwaderi case, Marino is the other case involved, and it says that if the opponent is not willing to put in the time to oppose the motion, the court shouldn't do it. And we've explained ad nauseum in the briefs why this should not be done. A question on that quickly. She, as a bankruptcy judge, has a duty to monitor fees. It's perhaps different, I think different from that of a trial judge, in that it's not just a dispute between the parties, but it affects the estate. Does that make a difference to your analysis? I don't think it affects the estate. Typically, as a bankruptcy judge, it does. Okay. In this case, I don't think, in the adversary certainly, we didn't think these would affect the estate. These are sort of post-petition fees. It would not augment your claim against the estate? Not under 685.040. There might be some new way of doing that, but the estate is probably going to be minimal compared to the fee claims. But that would be another statute regarding, I think it's 506B or something, but I'm not a pure bankruptcy attorney. Mr. Ellis and I are basically litigators all the way into this. Well, your time's up, so I'll give you one more. Do I have 25 seconds? No, you're over. You got 30, 31. That's the time over. All right. Thank you very much. I thank you both for your good arguments. We will take all these matters under submission, and we are adjourned for the day.
judges: Taylor, Lafferty, and Spraker